UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

NICOLE LEE DUNN,

                                        Plaintiff,

                                                        5:23-cv-00730
v.                                                         (GTS/TWD)

ONONDAGA COUNTY MEDICAL EXAMINER'S
OFFICE and INVESTIGATOR MATTHEW KELLY,

                                    Defendants.

_____

APPEARANCES:

NICOLE LEE DUNN
*Plaintiff*, *pro se*
8418 Theodolite Drive
#722
Baldwinsville, NY 13027

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

### ORDER AND REPORT-RECOMMENDATION

      On June 16, 2023, *pro se* plaintiff Nicole Lee Dunn ("Plaintiff") commenced this action

pursuant to 42 U.S.C. § 1983 against the defendants Onondaga County Medical Examiner's

Office and Investigator Matthew Kelly (together "Defendants") "for relief and damages to

defend and protect rights by the Constitution of United States." (Dkt. No. 1 at ¶¶ 1, 3.[1]) Plaintiff

has not paid the filing fee for this action and seeks leave to proceed *in forma pauperis* ("IFP").

(Dkt. No. 2.) The complaint states the following facts, in full:

                      Applicable to death investigation of Forensics to scene 02/02/2013
                      deceased, Salena Bennett, I, Nicole Lee Dunn, biological daughter

---

[1] Unless otherwise indicated, excerpts from Plaintiff's complaint are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

> expressed concerns to Inv. Kelly whom responses were not par to statements, questions I communicated to he in verbal conversation.
>
> Applicable to Medical Examiner and persons whom are representation to Medical Examiner's Office I did not receive proper, timely to reason(s) etc. in regard to pre and post autopsy, forensics to include "outside"/anxillary labs involved.

*Id*. at ¶ 4.  The complaint does not list any causes of action.  *See id*. at ¶ 5.  From what the Court can glean, as relief, she seeks "damages" and "further information" related to the foregoing described "improper misconduct" and "death investigation."  *Id*. at ¶ 6; *see also* Dkt. No. 1-1.

## I.     IFP APPLICATION

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $402, must ordinarily be paid.  28 U.S.C. § 1914(a).  A court is authorized, however, to permit a litigant to proceed IFP if a party "is unable to pay" the standard fee for commencing an action.  28 U.S.C. § 1915(a)(1).  After reviewing Plaintiff's IFP application (Dkt. No. 2), the Court finds she meets this standard.  Therefore, Plaintiff's IFP application is granted.

## II.    SUFFICIENCY OF THE COMPLAINT

### A.     Standard of Review

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).

To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While Rule 8(a) of the Federal Rules of Civil Procedure ("FRCP") which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id*.

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."  *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. Where a plaintiff is proceeding *pro se*, the court construes his pleadings "to raise the strongest arguments that they suggest."  *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) (internal quotation marks omitted).  However, this "does not exempt a [*pro se* litigant] from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

**B.    Analysis**

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States."  *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted).  "Section 1983 itself creates no substantive rights, [but] . . .

3

only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).  To establish liability under the statute, a plaintiff must plead that each government official defendant violated the Constitution through that official's own individual actions. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). An official may not be held liable for constitutional violations simply because he held a high position of authority. *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016).  A municipality cannot be held liable under Section 1983 unless the challenged action was undertaken pursuant to a municipal policy, custom, or practice. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978).

Plaintiff's complaint is largely incomprehensible and must be dismissed for several reasons.  Rule 8 of the FRCP requires a "short and plain statement" of a claim, showing that "the pleader is entitled to relief." *Whitfield v. Johnson*, 763 F. App'x 106, 107 (2d Cir. 2019) (quoting Fed. R. Civ. P. 8(a)).  Each statement must be "simple, concise, and direct,' and must give 'fair notice of the claims asserted." *Id*. (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)).  A pleading must also contain "a demand for the relief sought[.]" *Id*.  "A complaint may be dismissed under Rule 8 if it is 'so confused, ambiguous, or otherwise unintelligible that its true substance, if any, is well disguised.'" *Id*.  Moreover, Rule 10 of the FRCP provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances[.]" Fed. R. Civ. P. 10(b).  Rule 10's purpose is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Clervrain v. Robbins*, No. 1:22-cv-1248 (MAD/DJS), 2022 WL 17517312, at *2 (N.D.N.Y. Dec. 8, 2022) (citation omitted), *report and recommendation adopted*, 2023 WL 3170384 (N.D.N.Y. May 1, 2023).  A complaint that does not comply with these Rules "presents

far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

As it currently stands, Plaintiff's complaint wholly fails to provide fair notice of the claims she attempts to assert. Given its lack of clarity, the Court recommends dismissal of the complaint because it is not acceptable under Rules 8 and 10 of the FRCP and because Plaintiff's Section 1983 claims against Defendants are entirely unclear.

Insofar as Plaintiff seeks to impose liability upon the Onondaga County Medical Examiner's Office, it lacks an independent legal identity apart from the municipality, Onondaga County, and cannot be sued directly. *See Jackson v. Cty. of Nassau*, No. 07-CV-245, 2010 WL 335581, at *5 (E.D.N.Y. Jan. 22, 2010) ("Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued."); *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) (dismissing claim against the local police department because, as an "administrative arm of a municipality[, it] do[es] not have legal identity separate and apart from the municipality, and therefore, cannot sue or be sued."). Therefore, the Court recommends dismissing this Defendant for failing to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

In any event, municipal governments like Onondaga County may be held liable under Section 1983 "only for unconstitutional or illegal policies, not for the illegal conduct of their employees." *Monell*, 436 U.S. at 691. As is readily apparent, Plaintiff's complaint is devoid of any such allegation.

Lastly, claims brought under Section 1983 generally must be filed within three years of the date a claim accrues.[2]  Section 1983 claims generally accrue when a plaintiff knows or has reason to know of the injury that is the basis of the claim.  *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013).  While Plaintiff's Section 1983 claims are not clear, Plaintiff appears to complain about events that occurred in February 2013, and the complaint was filed in June 2023, well after the three-year limitation period likely expired.[3]  Thus, in the absence of some basis for tolling or disregarding the limitations period, any Section 1983 claims, which are based on alleged events that occurred in February 2013, i.e., more than three years before the complaint was filed on June 16, 2023, are likely subject to dismissal as untimely asserted.  *See Abbas v. Dixon*, 480 F.3d 636, 640-41 (2d Cir. 2007) (explaining that a district court should not dismiss a complaint as time-barred without providing a *pro se* plaintiff with notice and an opportunity to be heard as to whether there might be a meritorious tolling argument or other reason why the complaint might be considered timely);[4] *see also Walters v. Indus. and Commercial Bank of China, Ltd.*, 651 F.3d

---

[2]  The statute of limitations for Section 1983 claims is found in the "general or residual [state] statute [of limitations] for personal injury actions."  *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)).  In New York, that period is three years.  *See* N.Y. C.P.L.R. § 214(5).

[3]  However, because the failure to file an action within the limitations period is an affirmative defense, a plaintiff is not required to plead that the case is timely filed.  *See Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007).  Dismissal is appropriate, however, where the existence of an affirmative defense, such as the statute of limitations, is plain from the face of the pleading.  *See Walters v. Indus. and Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) ("[D]istrict courts may dismiss an action *sua sponte* on limitations grounds in certain circumstances where the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted.") (internal quotation marks and citation omitted); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (affirming *sua sponte* dismissal of complaint as frivolous on statute of limitations grounds); *see also Abbas*, 480 F.3d at 640 (concluding that district court should grant notice and opportunity to be heard before dismissing complaint *sua sponte* on statute of limitations grounds).

[4]  Equitable tolling is available in "rare and exceptional" cases where "extraordinary circumstances prevented a party from timely performing a required act," and "the party acted with reasonable diligence throughout the period" to be tolled.  *Walker v. Jastremski*, 430 F.3d

280, 293 (2d Cir. 2011) ("[D]istrict courts may dismiss an action *sua sponte* on limitations

grounds in certain circumstances where the facts supporting the statute of limitations defense are

set forth in the papers plaintiff himself submitted.") (internal quotation marks and citation

omitted); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (affirming *sua sponte* dismissal of

complaint as frivolous on statute of limitations grounds).

## III.   OPPORTUNITY TO AMEND

Generally, before a court dismisses a *pro se* complaint or any part of the complaint *sua

sponte*, the court should afford the plaintiff the opportunity to amend at least once.  *Ruffolo v.

Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).  However, leave to amend may be denied

where any amendment would be futile.  *Id*.  Futility is present when the problem with the

plaintiff's causes of action is substantive such that better pleading will not cure it.  *Cuoco v.

Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Although this Court has serious doubts, it is not clear whether better pleading would

permit Plaintiff to assert a cognizable cause of action against Investigator Michael Kelly or

Onondaga County.  Out of an abundance of caution and in deference to Plaintiff's *pro se* status,

the Court recommends the complaint be dismissed with leave to amend to cure the defects as

stated above.

The Court advises Plaintiff that should she be permitted to amend her complaint, any

amended pleading she submits must comply with Rules 8 and 10 of the FRCP.  Any such

---

560, 564 (2d Cir. 2005).  As the Second Circuit recognized in *Abbas*, New York law recognizes
the equitable tolling doctrine where a plaintiff demonstrates that he was induced by fraud,
misrepresentations, or deception to refrain from timely commencing an action, and that he acted
with due diligence throughout the period to be tolled.  *See Abbas*, 480 F.3d at 642; *see also
Gonzalez v. Hasty*, 651 F.3d 318, 322 (2d Cir. 2011) ("Equitable tolling is an extraordinary
measure that applies only when plaintiff is prevented from filing despite exercising that level of
diligence which could reasonably be expected in the circumstances.").

amended complaint, which shall supersede and replace in its entirety the previous complaint filed by Plaintiff, must contain sequentially numbered paragraphs containing only one act of misconduct per paragraph.  Thus, if Plaintiff claims that her civil and/or constitutional rights were violated by more than one defendant, or on more than one occasion, she should include a corresponding number of paragraphs in her amended complaint for each such allegation, with each paragraph specifying (i) the alleged act of misconduct; (ii) the date, including the year, on which such misconduct occurred; (iii) the names of each and every individual who participated in such misconduct; (iv) where appropriate, the location where the alleged misconduct occurred; and (v) the nexus between such misconduct and Plaintiff's civil and/or constitutional rights.  If Plaintiff asserts claims that are time barred, she should also include facts showing that the limitation period should be tolled.

Plaintiff is further cautioned that no portion of her prior complaint shall be incorporated into her amended complaint by reference.  Any amended complaint submitted by Plaintiff must set forth all of the claims she intends to assert against the defendants and must demonstrate that a case or controversy exists between the Plaintiff and the defendants which Plaintiff has a legal right to pursue and over which this Court has jurisdiction.  If Plaintiff is alleging the defendants violated a law, she should specifically refer to such law.

**WHEREFORE**, based on the findings above, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **GRANTED**;[5] and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITH LEAVE TO AMEND**; and it is further

---

[5]  Although her IFP Application has been granted, Plaintiff will still be required to pay fees that she may incur in this action, including copying and/or witness fees.

**RECOMMENDED** that the Onondaga County Medical Examiner's Officer be terminated as a defendant in this action; and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam) on Plaintiff.

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff has fourteen days within which to file written objections to the foregoing report.[6]  Such objections shall be filed with the Clerk of the Court.

**<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

**IT IS SO ORDERED.**

Dated:  July 6, 2023
        Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[6] If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

2022 WL 17517312

2022 WL 17517312
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Manetirony CLERVRAIN, Plaintiff,
v.
Jonathan ROBBINS, et al., Defendants.

1:22-CV-1248 (MAD/DJS)
|
Signed December 8, 2022

**Attorneys and Law Firms**

MANETIRONY CLERVRAIN, Plaintiff, Pro Se, Anderson, IN 46013.

## REPORT-RECOMMENDATION and ORDER

DANIEL J. STEWART, United States Magistrate Judge

**\*1** The Clerk has forwarded for review what has been docketed as a civil complaint filed by Plaintiff. Dkt. No. 1, Compl. Plaintiff has not paid the filing fee but has submitted an application to proceed *in forma pauperis* ("IFP"), Dkt. No. 2, which the Court has granted. [1]

[1]   Plaintiff has also moved for leave to file electronically. Dkt. No. 3. Given the recommended disposition of this case, that Motion is denied with leave to renew if Plaintiff files a complaint that survives review under section 1915.

## I. SUFFICIENCY OF THE COMPLAINT

### A. Governing Legal Standard

28 U.S.C. § 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2) ... the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [2] Thus, even if a plaintiff meets the financial criteria to commence an action *in forma pauperis*, it is the court's responsibility to determine whether the plaintiff

may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action *in forma pauperis*. *See id.*

[2]   To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (*per curiam*); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate *pro se* prisoner complaints).

In reviewing a *pro se* complaint, the court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (*per curiam*), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556).

**\*2** Although a court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).

**B. Analysis of the Complaint**

A court's initial review of a complaint under § 1915(e) must encompass the applicable standards of the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

FED. R. CIV. P. 8(a). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Hudson v. Artuz*, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995)). Moreover, Rule 10 of the Federal Rules of Civil Procedure provides, in part:

**(b) Paragraphs; Separate Statements.** A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). The purpose of Rule 10 is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Sandler v. Capanna*, 1992 WL 392597, at *3 (E.D. Pa. Dec. 17, 1992).

A complaint that fails to comply with basic pleading requirements presents too heavy a burden for defendants to craft a defense "and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

Plaintiff's Complaint clearly does not satisfy these requirements. The nature of the Complaint is unclear. The Complaint recites a wide variety of federal statutes and case law, but a thorough review of the main Complaint and the numerous attachments does not provide clarity as to what federal claim Plaintiff seeks to pursue in this Court. It is unclear what relationship the individuals identified by Plaintiff as Defendants have to Plaintiff and how he alleges they violated his rights.

Given its lack of clarity, the Complaint is clearly subject to dismissal. "[A] court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Bruce v. Tompkins Cty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at *4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991)). Accordingly, the Court recommends that the Complaint be dismissed, but that Plaintiff be afforded an opportunity to amend.

**\*3** The Court advises Plaintiff that should he be permitted to amend his Complaint, any amended pleading she submits must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Any such amended complaint, **which shall supersede and replace in its entirety the previous Complaint filed by Plaintiff**, must contain **sequentially numbered paragraphs containing only one act of misconduct per paragraph**. Thus, if Plaintiff claims that his civil and/or constitutional rights were violated by more than one defendant, or on more than one occasion, he should include a corresponding number of paragraphs in his amended complaint for each such allegation, with each paragraph specifying (i) the alleged act of misconduct; (ii) the date, including the year, on which such misconduct occurred; (iii) the names of each and every individual who participated in such misconduct; (iv) where appropriate, the

2022 WL 17517312

location where the alleged misconduct occurred; and, (v) the nexus between such misconduct and Plaintiff's civil and/or constitutional rights.

Plaintiff is further cautioned that no portion of his prior Complaint shall be incorporated into his amended complaint by reference. Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the defendants and must demonstrate that a case or controversy exists between the Plaintiff and the defendants which Plaintiff has a legal right to pursue and over which this Court has jurisdiction. If Plaintiff is alleging that the named defendant violated a law, he should specifically refer to such law.

## II. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Complaint be **DISMISSED with leave to amend**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) [3] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

[3]    If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

**All Citations**

Slip Copy, 2022 WL 17517312

---

2023 WL 3170384
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Manetirony CLERVRAIN, Plaintiff,

v.

Jonathan ROBBINS, Jean-Max Bellerive,
Josue Pierre-Louis, Garry Conille, Jean-Claude
Theogene, Barthelemy Anteno, Kwasi Amoako-
Attah, and Victor (Ito) Bisono Haza, Defendants.

1:22-CV-1248 (MAD/DJS)
|
Signed May 1, 2023

**Attorneys and Law Firms**

MANETIRONY CLERVRAIN, 4326 South Scatterfield
Road, Suite 153, Anderson, Indiana 46013, Plaintiff, Pro Se.

**ORDER**

Mae A. D'Agostino, United States District Judge:

 **\*1** On November 22, 2022, *pro se* Plaintiff Manetirony
Clervrain ("Plaintiff") filed a complaint against Defendants
consisting of 70 pages of forms and documents, *see* Dkt. No.
1, "recit[ing] a wide variety of federal statutes and case law,"
Dkt. No. 7 at 5, and around two hundred pages of attachments.
*See* Dkt. Nos. 1-1, 1-5, 1-6. On the same day, Plaintiff moved
for leave to proceed *in forma pauperis* ("IFP"), *see* Dkt. No.
2, and to obtain an ECF login and password. *See* Dkt. No. 3.

On December 8, 2022, Magistrate Judge Daniel J. Stewart
granted Plaintiff's motion to proceed IFP. *See* Dkt.
No. 6. Additionally, Magistrate Judge Stewart issued a
Report-Recommendation and Order recommending that the
complaint be dismissed with leave to amend. *See* Dkt.
No. 7. Plaintiff has not filed an objection to the Report-
Recommendation and Order.

When a party declines to file objections to a magistrate judge's
report-recommendation or files "[g]eneral or conclusory
objections or objections which merely recite the same
arguments [presented] to the magistrate judge," the district
court reviews those recommendations for clear error. *O'Diah
v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, \*1 (N.D.N.Y.
Mar. 16, 2011) (citations and footnote omitted); *see also*

*McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y.
2007). After the appropriate review, "the court may accept,
reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate judge." 28 U.S.C.
§ 636(b)(1).

"[I]n a *pro se* case, the court must view the submissions
by a more lenient standard than that accorded to 'formal
pleadings drafted by lawyers.' " *Govan v. Campbell*, 289
F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v.
Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted).
The Second Circuit has held that the court is obligated to
" 'make reasonable allowances to protect *pro se* litigants' "
from inadvertently forfeiting legal rights merely because they
lack a legal education. *Govan*, 289 F. Supp. 2d at 295 (quoting
*Taguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

Having reviewed the December 8, 2022 Report-
Recommendation and Order, Plaintiff's complaint and the
applicable law, the Court finds that Magistrate Judge Stewart
correctly determined that the complaint should be dismissed.
The complaint is largely incomprehensible and suffers from
several deficiencies. Rule 8(a) of the Federal Rules of Civil
Procedure provides that a pleading must contain "a short
and plain statement of the claim showing that the pleader is
entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff's complaint
is neither short nor plain. *See* Dkt. No. 1. As currently
drafted, and even with the leniency given to a *pro se* litigant's
pleadings, Plaintiff failed to meet pleading standards such
that the Court is unable to meaningfully analyze whether
Plaintiff can allege any colorable claim against Defendants.
*See Canning v. Hofmann*, No. 1:15-CV-0493, 2015 WL
6690170, \*5 (N.D.N.Y. Nov. 2, 2015) ("[H]aving found
that none of the allegations in Plaintiff's meandering and
indecipherable Complaint raise a cognizable cause of action,
the Court concludes that the Complaint fails to state a claim
upon which relief may be granted and is subject to dismissal")
(citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

 **\*2** Finally, the Court agrees with Magistrate Judge Stewart
that Plaintiff should be granted an opportunity to amend
out of deference to Plaintiff's *pro se* status. *See Nielsen
v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (" 'Generally,
leave to amend should be freely given, and a *pro se*
litigant in particular should be afforded every reasonable
opportunity to demonstrate that he has a valid claim' ")
(quotation omitted). Should Plaintiff choose to amend the
complaint, the Court urges Plaintiff to review Magistrate

Judge Stewart's suggestions in the Report-Recommendation and Order thoroughly. *See* Dkt. No. 7 at 4-6.

Accordingly, the Court hereby

**ORDERS** that the Report-Recommendation and Order (Dkt. No. 7) is **ADOPTED in its entirety**; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED with leave to amend**; and the Court further

**ORDERS** that Plaintiff shall file his amended complaint within **thirty (30) days** of the date of this Order; and the Court further

**ORDERS** that, if Plaintiff fails to file an amended complaint within thirty (30) days of the date of this Order, the Clerk of the Court shall enter judgment in Defendants' favor and close this case without further order from this Court; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2023 WL 3170384

---

End of Document

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

 © 2023 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment
Distinguished by   Hogan v. County of Lewis, N.Y.,   N.D.N.Y.,   March 8, 2013

2010 WL 335581
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
E.D. New York.

Erwin JACKSON, Plaintiff,
v.

COUNTY OF NASSAU, Nassau County Police Department, and Office of the Nassau County District Attorney, Defendants.

No. 07-CV-245 (JFB)(AKT).
|
Jan. 22, 2010.

**Attorneys and Law Firms**

Erwin Jackson, pro se.

Ralph J. Reissman and Sara A. Wells of the Nassau County Attorney's Office, Mineola, NY, for defendants.

**MEMORANDUM AND ORDER**

JOSEPH F. BIANCO, District Judge.

 **\*1** On January 17, 2007, pursuant to 42 U.S.C. § 1983, *pro se* plaintiff Erwin Jackson ("plaintiff" or "Jackson") brought this action against defendants County of Nassau ("the County"), Nassau County Police Department, and the Office of the Nassau County District Attorney alleging that defendants violated plaintiff's rights under the First, Fourth, and Fourteenth Amendments of the United States Constitution. Specifically, Jackson claims that his constitutional rights were violated during his pretrial proceedings when police officers allegedly withheld exculpatory evidence, made perjurous statements, and falsely verified felony complaints against plaintiff when they had no personal knowledge of the underlying facts. Jackson further contends that the County of Nassau has a policy of committing these constitutional violations. Jackson also alleges that the County of Nassau

has a policy of failing to investigate criminal complaints regarding these types of violations if they are filed by pretrial detainees or criminal defendants. The defendants now move, jointly, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, defendants' motion is granted.

I. FACTS

The Court has taken the facts set forth below from the parties' depositions, affidavits, and exhibits, and from the defendants' respective Rule 56.1 statements of facts. [1] Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party-here, the plaintiff. *See Capobianco v. City of New York,* 422 F.3d 47, 50 n. 1 (2d Cir.2001). Unless otherwise noted, where a party's 56.1 statement or deposition is cited, that fact is undisputed or the opposing party has pointed to no evidence in the record to contradict it. [2]

[1]    The Court notes that plaintiff failed to file and serve a response to defendant's Local Rule 56.1 Statement of Facts in violation of Local Civil Rule 56.1. Generally, a "plaintiff['s] failure to respond or contest the facts set forth by the defendants in their Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed." *Jessamy v. City of New Rochelle,* 292 F.Supp.2d 498, 504 (S.D.N.Y.2003) (quoting *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.,* 262 F.Supp.2d 134, 139 (S.D.N.Y.2003)). However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 73 (2d Cir.2001) (citations omitted); *see also Gilani v. GNOC Corp.,* No. 04 Civ. 2935(ILG), 2006 WL 1120602, at \*2 (E.D.N.Y. Apr. 26, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). In plaintiff's opposition papers, he specifically identified those paragraphs of defendants' Rule 56.1 statement with which he agreed that there were no material disputed issues of fact. The Court, in its discretion, thus relies on those paragraphs as equivalent to plaintiff's Rule 56 .1 statement of facts for the purposes of this

opinion. In the exercise of its broad discretion and given plaintiff's *pro se* status, the Court will also only deem admitted those facts in defendant's Rule 56.1 statement that are supported by admissible evidence and not controverted by other admissible evidence in the record. *See Jessamy,* 292 F.Supp.2d at 504-05.

2    Because plaintiff is *pro se,* the Court has independently reviewed plaintiff's deposition testimony. Plaintiff's deposition contains no additional evidence other than plaintiff's speculation and conclusory allegations.

### A. The Underlying Prosecution

On November 22, 2005, plaintiff Erwin Jackson was arrested by Nassau County police officers for attempted robbery of the Bank of America located in Baldwin, New York, on November 21, 2005. (Defs.' 56.1 Statement ¶ 4.) Plaintiff was brought to the Bellmore police station, where he was questioned about the November 21, 2005 robbery. (Deposition of Irwin Jackson, Defs.' Ex. E (hereinafter "Pl.'s Dep.") at 32-33.) At the station, Jackson was also questioned about other bank robberies. (*Id.* at 34-35.) Plaintiff was arrested and arraigned on November 23, 2005. He was charged for the November 21 robbery and four additional robberies that had occurred in Nassau County on November 13, 2005, October 1, 2005, September 2, 2005, and July 23, 2005. (*Id.* at 40-41; Defs.' 56.1 Statement ¶ 5.) Plaintiff was indicted by a grand jury on thirteen counts on December 19, 2005. (Pl.'s Dep. at 44-45.) In June 2006, a pretrial suppression hearing was held, at which Police Officer Joseph Hughes testified. (*Id.* at 45-46.) Plaintiff proceeded to trial on the charges and, on February 6, 2007, was found guilty on nine counts of Robbery in the First Degree (New York Penal Law 160.15) and one count of Conspiracy in the Fourth Degree (New York Penal Law 105.10). (*Id.* at 53-54.) On July 30, 2008, Jackson was sentenced to fifteen years for each of the nine counts of Robbery in the First Degree, plus one year and four months for Conspiracy in the Fourth Degree. (Defs.' 56.1 ¶ 8.) Jackson's minimum aggregate sentence was set at twenty-five years, eight months and sixteen days. (*Id.* ¶ 9.)

### B. Officer Hughes

**\*2**  By letter dated September 17, 2006, while a pretrial detainee, Jackson filed three criminal complaints against Police Officer Joseph Hughes with the Nassau County District Attorney's Criminal Complaint Unit. (*Id.* ¶ 10.) The complaints were based on Officer Hughes's allegedly inconsistent testimony at a pretrial suppression hearing. Jackson alleges that while testifying before the Grand Jury in December 2005, Officer Hughes stated that he observed five black males fleeing a four-door Buick wearing face masks. During a subsequent pretrial hearing on July 10, 2006, plaintiff cross-examined Officer Hughes. At that hearing, Officer Hughes stated that only some of the males he observed were wearing face masks. The testimony at the July 10 pretrial hearing was as follows:

Q: This individual jumps out of the car. This is the individual that you pursued after?

A: Correct. * * *

Q: Did he have mask on? A: No mask.

Q: No mask. You testified in the grand jury that all five of the occupants of that car that fled had masks on?

A: I was incorrect about that. I stated that before.

Q: That information wasn't true?

A: It was incorrect. * * *

Q: You testified they all had masks on. Now, you're saying, you take the mask off one-

A: I believe in that statement. I was describing all the occupants. I said, they all had masks on. I was incorrect. I should have said, some had masks on.

(*Id.* ¶ 12 (citing Ex. AB at 485-86).)

Jackson also claims Officer Hughes made a "punishable false written statement" and committed the crime of "offering a false instrument for filing" by verifying and signing five felony complaints against plaintiff, although Officer Hughes had no personal knowledge of the information contained in those complaints and relied on information provided by other officers. (*Id.* ¶¶ 13-14.) According to Jackson, during the pretrial hearing and trial of his co-defendant Paul Henry, Officer Hughes testified that it was police procedure for officers to verify and swear to felony complaints even though they lacked knowledge of the underlying facts or crimes alleged therein. (Pl.'s Dep. at 61.) Jackson also alleges that Hughes testified to this at Jackson's own trial on cross-examination. (*Id.* at 61-62.)

On September 21, 2006, Assistant District Attorney ("ADA") Thurer transferred plaintiff's perjury complaint against Officer Hughes to ADA Barbara Kornblau, Chief of the Public Corruption Bureau. (*Id.* ¶ 15.) ADA Kornblau reviewed plaintiff's complaint against Officer Hughes. Because plaintiff's case was still pending and "the issues alleged by plaintiff all pertained to credibility," (Defs.' Ex. K ¶ 6), ADA Kornblau notified Daniel Looney, the ADA prosecuting plaintiff, and plaintiff's attorney, Jeffrey Groder, of plaintiff's claims. The District Attorney's Office later informed Jackson that it also forwarded the case to the Internal Affairs Bureau of the Nassau County Police Department for administrative action at their discretion. (Pl.'s Dep. at 56; Defs.' 56.1 ¶ 16.) After receiving plaintiff's complaint from the District Attorney's Office, the Nassau County Police Department's Internal Affairs Bureau "determined that plaintiff's complaint against Officer Hughes for perjury was unfounded, since plaintiff had been convicted in a jury trial on February 6, 2007." (Defs.' 56.1 ¶ 18.)

### C. Detective Comiskey

**\*3** Jackson also filed criminal complaints against Detective Joseph Comiskey with the Nassau County District Court. (Pl.'s Dep. at 58-59.) According to Jackson, Detective Comiskey committed "official misconduct" and perjury for allegedly failing to provide plaintiff with "exculpatory material" in July 2006 at a pretrial hearing, and for advising the court that he had turned over all of his notes when, according to Jackson, he had not done so. (Defs.' 56.1 ¶ 19.) ADA Steven L. Schwartz, Chief of the Nassau County District Attorney's District Court Bureau, investigated these two complaints against Detective Comiskey, and found the claims in them unfounded. (*Id.* ¶ 20.) Plaintiff was subsequently informed that the District Attorney's Office declined to prosecute these complaints. (*Id.*) These complaints were also reviewed by ADA Kornblau, who determined that Detective Comiskey's actions were not a crime. (*Id.* ¶ 22.) Subsequently, as she had done with the complaint against Officer Hughes, she forwarded the complaints to the Nassau County Police Department Internal Affairs Bureau. (*Id.* ¶ 22.) ADA Kornblau also sent a letter to Jeffrey Groder, plaintiff's trial counsel, informing him of plaintiff's allegations, since they pertained to an incident in which Groder was involved. (*Id.*)

### D. The Instant Complaint

Jackson alleges eleven causes of action against the County of Nassau and two of its administrative arms, the Nassau County District Attorney's Office and the Nassau County Police Department, arguing that these entities had unconstitutional policies, practices, and customs that infringed his constitutional rights. Jackson asserts three claims specifically against the County of Nassau. First, he alleges that the County had a policy of failing to discipline its employees for any alleged perjury or cover-ups with respect to evidence. (Compl. at 5; Pl.'s Dep. at 93.) Jackson's second cause of action claims that the County has a policy, practice, procedure and custom of failing to take steps to terminate the unconstitutional practices of "its legal subordinates," defendants Nassau County Police Department and the Nassau County District Attorney's Office. (Compl. at 5; Pl.'s Dep. at 93-94.) Jackson's third cause of action alleges that the County has failed to properly train and supervise its employees with regard to "the proper constitutional and statutory requirements in the exercise of their authority." (Compl. at 5; Pl.'s Dep. at 94.)

Jackson asserts four claims against the Nassau County Police Department. The fourth cause of action in Jackson's complaint alleges that the Nassau County Police Department has a policy that authorizes subordinates to falsely verify and file criminal felony complaints without "knowledge of or knowledge based upon belief" of the underlying facts. (Compl. at 5; Pl.'s Dep. at 95.) The fifth cause of action alleges that the Nassau County Police Department failed to properly train and supervise its employees in the processing of arrestees. (Compl. at 5-6.) Specifically, Jackson contends that, due to inadequate training, employees of the Nassau County Police Department do not realize "that they are not authorized to swear or fill out a felony complaint that they have absolutely no knowledge of." (Pl.'s Dep. at 96.) The sixth cause of action in Jackson's complaint claims that the Nassau County Police Department has an illegal practice or custom that condones and sanctions its employees who commit perjury, which is demonstrated by the fact that plaintiff, a pretrial criminal defendant, attempted to file criminal charges against the defendants' subordinates, but the defendants took no corrective actions. (*Id.* at 96-97; Compl. at 6.) Jackson's seventh cause of action alleges that the Nassau County Police Department, as a policy maker, has a defective and illegal policy whereby it does not correct or punish wrongdoings,

such as those alleged in causes of action numbers four, five, and six. (Compl. at 6; Pl.'s Dep. at 97-98.)

**\*4** Jackson asserts his four final claims against the Nassau County District Attorney's Office. Jackson's eighth cause of action alleges that the Nassau County District Attorney's Office has a history and practice of ignoring criminal defendants' and arrestees' complaints, ignoring evidence of police misconduct, and shielding police officers and other assistant district attorneys from prosecution. (Compl. at 6.) Jackson's ninth cause of action alleges that the Nassau County District Attorney's Office does not give "any credence to pretrial criminal defendants who seek to file and give any credence to pretrial criminal defendants that seek to commence criminal actions in the court against public officials." (*Id.* at 130.) Specifically, plaintiff contends that the Nassau County District Attorney's Office declines to investigate, arrest, and/or prosecute public officials when illegal conduct is alleged by pretrial or criminal defendants. (Compl. at 6-7.) Jackson's tenth cause of action alleges that the Nassau County District Attorney's Office has failed to punish the illegal practices and wrongdoings of their employees and the Nassau County Police Department. (Compl. at 7.) Jackson's eleventh and final cause of action contends that the Nassau County District Attorney's Office has a policy and procedure whereby the district court clerk does not submit or file any claims or complaints against a public official made by criminal defendants. (Compl. at 7.)

## II. PROCEDURAL HISTORY

Jackson filed the complaint in this action on January 17, 2007. The Court granted plaintiff leave to proceed *in forma pauperis* on January 31, 2007. Defendants filed an answer to the complaint on May 23, 2007. On March 14, 2008, plaintiff filed a motion to amend the complaint. This Court denied that motion on February 13, 2009. On May 15, 2009, defendants submitted their motion for summary judgment and provided *pro se* plaintiff with the notice required by Local Civil Rule 56.2. Defendant submitted supplemental papers to their motion on June 5, 2009. Plaintiff submitted opposition papers on May 28, 2009. [3] Defendants filed their reply to plaintiff's opposition on June 5, 2009. Plaintiff also submitted a motion for sanctions against defendants on June 10, 2009. Defendants submitted their opposition to the motion for sanctions on June 11, 2009. This matter is fully submitted.

[3] Due to delay, it appears that plaintiff's response was not filed with the Court until June 11, 2009.

## III. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.,* 434 F.3d 165, 170 (2d Cir.2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones,* 396 F.3d 53, 69 (2d Cir.2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 122 (2d Cir.2004); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

**\*5** Once the moving party has met its burden, the opposing party " 'must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*' " *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir.2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) (emphasis in original). As the Supreme Court stated in *Anderson,* "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth " 'concrete particulars' " showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 77 (2d Cir.1984) (quoting *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978)). Accordingly, it is insufficient for a party opposing summary

judgment " 'merely to assert a conclusion without supplying supporting arguments or facts.' " *BellSouth Telecomms., Inc. v. W.R. Grace & Co.,* 77 F.3d 603, 615 (2d Cir.1996) (quoting *Research Automation Corp.,* 585 F.2d at 33).

Where the plaintiff is proceeding *pro se,* the Court must "construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggest[s]." *Weixel v. Bd. of Educ. of the City of N.Y.,* 287 F.3d 138, 145-46 (2d Cir.2002) (alterations in original) (quoting *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000)). Though a *pro se* litigant's pleadings and other submissions are afforded wide latitude, a *pro se* party's conclusory assertions, completely unsupported by evidence, are not sufficient to defeat a motion for summary judgment. *Shah v. Kuwait Airways Corp.,* --- F.Supp.2d ----, No. 08 Civ. 7371(GEL), 2009 WL 2877604, at *2 (S.D.N.Y. Sept. 9, 2009) ("Even a *pro se* party, however, 'may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that its version of the events is not wholly fanciful.' " (quoting *Auguste v. N.Y. Presbyterian Med. Ctr.,* 593 F.Supp.2d 659, 663 (S.D.N.Y.2009))).

## IV. DISCUSSION

### A. Proper Defendants

Plaintiff alleges specific causes of action against the Nassau County Police Department and Nassau County District Attorney's Office as defendants. However, "under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *See Davis v. Lynbrook Police Dep't,* 224 F.Supp.2d 463, 477 (E.D.N.Y.2002) (dismissing claim against Lynbrook Police Department); *see also Hall v. City of White Plains,* 185 F.Supp.2d 293, 303 (S.D.N.Y.2002) ("Because plaintiff has named the City of White Plains as a defendant, any claims against the [White Plains Department of Public Safety] are redundant. WPDPS does not have its own legal identity, and therefore the claims against it are dismissed."); *Polite v. Town of Clarkstown,* 60 F.Supp.2d 214, 216 (S.D.N.Y.1999) ("[M]unicipal departments in this State-such as the Clarkstown Police Department-are not amenable to suit, and no claims can lie directly against them."); *Wilson v. City of New York,* 800 F.Supp. 1098, 1101 (E.D.N.Y.1992) ("The court also dismisses the claims against the New York City Police Department, which cannot be sued

independently because it is an agency of the City of New York." (citations omitted)). Plaintiff's allegations against the Police Department are more properly raised in claims against Nassau County, which plaintiff has also brought in his first, second, and third causes of action. Accordingly, the Nassau County Police Department is dismissed as a defendant.

**\*6** For the same reason, plaintiff cannot bring claims against the Nassau County District Attorney's Office. *See Conte v. County of Nassau,* No. 06-CV-4746 (JFB)(ETB), 2008 WL 905879, at *1 n. 2 (E.D .N.Y. Mar. 31, 2008) (dismissing Section 1983 claims against the Nassau County District Attorneys Office because the entity is an " 'administrative arm[ ]' of the same municipal entity-the County ... and thus lack[s] the capacity to be sued"). Plaintiff's allegations against the District Attorneys Office are more properly brought as claims against Nassau County. Plaintiff has brought substantially the same claims against the District Attorney's Office as he has brought against the County of Nassau. Accordingly, the Nassau Count District Attorney's Office is dismissed as a defendant in this case. [4] Because the plaintiff is proceeding *pro se,* the Court, in its discretion, does not dismiss plaintiff's fourth through eleventh causes of action in their entirety, but rather construes those claims, which are largely duplicative of causes of action one through three, as against the County of Nassau.

[4]     The Court further notes that it has previously denied plaintiff's attempt to amend his complaint to state claims against Lawrence Mulvey, the Commissioner of the Nassau County Police Department, and Kathleen Rice, the Nassau County District Attorney. *See Jackson v. County of Nassau,* No. 07-CV-0245 (JFB)(AKT), 2009 WL 393640 (E.D.N.Y. Feb. 13, 2009).

### B. Section 1983 Liability

As stated *supra,* Jackson has brought his claims pursuant to Section 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan,* 443 U.S. 137, 145 n. 3 (1979). [5] For claims under Section 1983, a plaintiff must prove that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of

the United States." *Snider v. Dylag,* 188 F.3d 51, 53 (2d Cir.1999) (citation omitted). Here, the parties do not dispute that defendants were acting under color of state law. The question presented, therefore, is whether defendants' conduct deprived Jackson of the rights he asserts.

5  Specifically, Section 1983 provides as follows:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....
>
> 42 U.S.C. § 1983.

Although *pro se* plaintiff alleges eleven separate causes of action against the County of Nassau and its administrative arms, at core, the claims alleged by plaintiff in his complaint are as follows: (1) the County of Nassau has a policy or practice of permitting its employees (or employees of its administrative arms) to commit perjury and a policy or practice of failing to discipline its employees who do commit perjury; (2) the County of Nassau has a policy or practice of permitting its police officers to falsely verify criminal complaints; and (3) the County of Nassau has a policy of not investigating, responding to, or prosecuting complaints or cross-criminal complaints of pretrial detainees and criminal defendants that allege crimes and misconduct against police officers and assistant district attorneys. (Plaintiff's Opposition (hereinafter "Opp.") at 14.)

Defendants argue that they are entitled to summary judgment on the grounds that Jackson has failed to provide any evidence that would raise a genuine issue of fact as to municipal liability for any of these claims. As set forth below, the Court agrees. First, plaintiff has failed to provide any evidence that there was an underlying constitutional violation with respect to his arrest and conviction, which would be a necessary element of any municipal liability claim. In fact, under well-settled Supreme Court and Second Circuit precedent, plaintiff's valid conviction precludes him from litigating any of his claims in the instant case because success on such claims (that is, demonstrating his constitutional rights were violated in connection with the investigation and prosecution of his case) would necessarily implicate the unconstitutionality of his conviction. Second, plaintiff has

provided absolutely no evidence of an unconstitutional policy or custom of the County of Nassau and, thus, his municipal liability claims against the County cannot survive summary judgment.

### (1) Plaintiff Cannot Demonstrate Violation of His Constitutional Rights

**\*7** To bring a successful Section 1983 claim, plaintiff must first demonstrate that he was injured as a result of a constitutional violation. In the instant case, plaintiff cannot do so. First, Supreme Court precedent prevents a prisoner, like Jackson, from bringing a Section 1983 claim where success on the claim necessarily would implicate the unconstitutionality of the prisoner's conviction or sentence. Second, even assuming this rule did not apply, plaintiff has presented no evidence of any constitutional violations relating to his conviction.

### a. *Heck v. Humphrey*

As a threshold matter, although not explicitly raised by defendants, plaintiff's claims fail as a matter of law, by virtue of his conviction. Specifically, the Supreme Court's decision in *Heck v. Humphrey,* 512 U.S. 477 (1994), entitles defendants to a decision in their favor as a matter of law with respect to these claims.

### i. The *Heck* Rule

In *Heck v. Humphrey,* the Supreme Court "confronted the question of whether, given the overlap between § 1983 and the federal habeas corpus statute, a prisoner seeking civil damages may proceed with a § 1983 claim where success on the claim necessarily would implicate the unconstitutionality of the prisoner's conviction or sentence." *Amaker v. Weiner,* 179 F.3d 48, 51 (2d Cir.1999) (citing *Heck,* 512 U.S. at 480-90). The Supreme Court in that case explained:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a

§ 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. at 486-87 (footnote omitted) (emphasis in original); *see also Wilkinson v. Dotson,* 544 U.S. 74, 81 (2005) ("Heck specifies that a prisoner cannot use § 1983 to obtain damages where success *would* necessarily imply the unlawfulness of a (not previously invalidated) conviction or sentence." (emphasis in original)).

Thus, pursuant to *Heck,* courts routinely dismiss claims brought under Section 1983 when such claims bear on the validity of an underlying conviction or sentence. *See, e.g., Guerrero v. Gates,* 442 F.3d 697, 703-04 (9th Cir.2006) (holding that Heck bars plaintiff's § 1983 claims of wrongful arrest, malicious prosecution, and conspiracy); *Amaker,* 179 F.3d at 51-52 (holding that *Heck* applies to Section 1983 conspiracy); *Perez v. Cuomo,* No. 09 Civ. 1109(SLT), 2009 WL 1046137, at *7 (E.D.N.Y. Apr. 17, 2009) ("A § 1983 claim for the violation of the due process right to a fair trial is, in essence, a claim for damages attributable to an unconstitutional conviction.... Since plaintiff's conviction remains valid, plaintiff's claim for violation of his right to a fair trial is not cognizable under § 1983, and must be dismissed as to all defendants[.]") (internal quotation marks and citations omitted); *Younger v. City of N.Y.,* 480 F.Supp.2d 723, 730 (S.D.N.Y.2007) (holding that plaintiff's claims for false arrest/imprisonment and malicious prosecution were barred by his plea of guilty pursuant to *Heck); cf. Jovanovic*

*v. City of N.Y.,* No. 04 Civ. 8437, 2006 WL 2411541, at * 12 (S.D.N.Y. Aug. 17, 2006) (applying *Heck* to a Section 1983 claim for denial of the right to a fair trial in the context of a statute of limitations issue).

## ii. Application

**\*8** Here, as stated *supra,* Jackson was convicted after a trial in state court of nine counts of Robbery in the First Degree and one count of Conspiracy in the Fourth Degree on July 30, 2008. It is apparent that Jackson is still incarcerated for this conviction and, to date, has been unsuccessful in challenging his conviction or has not even attempted to do so. Under these circumstances, the Supreme Court's holding in *Heck* precludes plaintiff from bringing claims in this Court under Section 1983 for municipal liability, because a plaintiff bringing such claims must demonstrate a constitutional violation in connection with his conviction, and a successful result in this case on any one of plaintiff's claims would bear on the validity of that underlying conviction.

Indeed, *Heck'* s application to the instant matter is straightforward. Plaintiff's complaint claims that he was "subsequently indicted based upon officer Hughes['s] 'inaccurate' testimony." (Compl.¶ 9.) Plaintiff also contends that during his pretrial hearings there was extensive "late disclosure of [exculpatory] material." (*Id.* ¶ 11.) Although it is true that not all claims brought under Section 1983 necessarily implicate the validity of the underlying conviction, in this case, plaintiff's assertions of perjury, withheld evidence, and falsely sworn documents during his trial by police officers do necessarily implicate the validity of his conviction and are thus barred by the *Heck* rule. [6] *See, e.g., McCloud v. Jackson,* 4 F. App'x 7, 10 (2d Cir.2001) ("[Plaintiff] could not assert [municipal liability] claims under § 1983 against the county defendants for holding him in jail because any claim for money damages which, as here, necessarily imputes the invalidity of a conviction, is barred under *Heck v. Humphrey,* 512 U.S. 477, 484, 486-87 (1994), until such time as the conviction is vacated or otherwise invalidated."); *Channer v. Mitchell,* 43 F.3d 786, 787-88 (2d Cir.1994) (per curiam) (affirming *Heck*-based dismissal of claim that police officers committed perjury and coerced witnesses to identify plaintiff wrongfully); *Williams v. Schario,* 93 F.3d 527, 529 (8th Cir.1996) ("[A] judgment in Williams's favor on his damages claim that defendants engaged in malicious prosecution and presented perjured testimony would 'necessarily imply the invalidity of his conviction or sentence' " (quoting *Heck,*

512 U.S. at 487)); *Smithart v. Towery,* 79 F.3d 951, 952-53 (9th Cir.1996) (per curiam) (affirming *Heck*-based dismissal of § 1983 claim of conspiracy to "bring unfounded criminal charges" against plaintiff); *Jasper v. Fourth Court of Appeals,* No. 08 Civ. 7472(LAP), 2009 WL 1383529, at *1 (S.D.N.Y. May 18, 2009) ("The Court liberally construes this complaint as asserting that plaintiff was denied his constitutional right to a fair trial. [However, s]ince plaintiff's conviction remains valid, plaintiff's fair trial claim is not cognizable under § 1983, and it must be dismissed as to all defendants[.]"); *Perez,* 2009 WL 1046137, at *7 ("A § 1983 claim for the violation of the due process right to a fair trial is, in essence, a claim for damages attributable to an unconstitutional conviction.... Since plaintiff's conviction remains valid, plaintiff's claim for violation of his right to a fair trial is not cognizable under § 1983, and must be dismissed as to all defendants[ .]") (internal quotation marks and citations omitted); *Fernandez v.. Holzbach,* No. 3:04 Civ. 1664(RNC), 2007 WL 1467182, at *1 (D.Conn. May 15, 2007) (holding that plaintiff's allegations that his convictions were based on perjury and fabricated evidence pursuant to a conspiracy to violate his federal rights "necessarily impl[ied] that he was wrongly convicted" and could not be litigated "until he show[ed] that the convictions have been invalidated"); *Duamutef v. Morris,* 956 F.Supp. 1112, 1115-16 (S.D.N.Y.1997) (dismissing § 1983 claims for, *inter alia,* malicious prosecution, false arrest, and perjury during trial due to a failure to state a claim under *Heck* because of the valid underlying criminal conviction). Thus, in order to bring a cognizable Section 1983 claim in this Court for the harms alleged, plaintiff must first establish the invalidity of his state court conviction.

6      With respect to plaintiff's claim that the County of Nassau has a policy of declining to investigate criminal complaints filed by pretrial detainees and criminal defendants, as discussed *infra,* plaintiff has failed to present any evidence that his claim was not investigated, whereas the County has presented substantial evidence demonstrating that plaintiff's claim was, in fact, investigated. Moreover, the prosecution of plaintiff's criminal complaints against Officer Hughes and Detective Comiskey would have implicated the validity of his underlying conviction, in contravention of the *Heck* rule. Accordingly, *Heck* can be construed to preclude all of plaintiff's Section 1983 claims.

**\*9** The fact that plaintiff is seeking to assert municipal liability claims against the County of Nassau, rather than against individual defendants, does not vitiate the application

of the *Heck* rule to plaintiff's claims. To prevail against the County of Nassau in his Section 1983 action under any of these theories, a plaintiff must plead and prove: (1) there was an official municipal policy or custom; and (2) that policy or custom caused him to be subjected to a denial of a constitutional right. *See Monell v. Dep't Soc. Servs.,* 436 U.S. 658, 690-91 (1978). There must be a "direct causal link" between the alleged municipal action and the deprivation of the plaintiff's constitutional rights. *City of Canton, Ohio v. Harris,* 489 U.S. 378, 385 (1989); *Vippolis v. Vill. of Haverstraw,* 768 F.2d 40, 44 (2d Cir.1985); *see also Lynch v. Suffolk County Police Dep't,* No. 07-3684-cv, 2009 WL 3287565, at *2 (2d Cir. Oct. 14, 2009) ("In order to prevail on a claim against a municipality under *Monell,* a plaintiff must allege, among other things, that a 'municipal policy of some nature caused a constitutional tort.' " (citations omitted)). In the instant case, because the Court finds as a matter of law on summary judgment that *Heck v. Humphrey* prevents a finding that a constitutional violation was committed against plaintiff by any of the defendants, *see supra,* no *Monell* claim can lie against the County of Nassau pursuant to § 1983.[7] *See, e.g., Lynch,* 2009 WL 3287565, at *2 ("Insofar as plaintiff alleges that a municipal policy caused prosecutorial misconduct in the trial that led to his felony convictions, plaintiff's claim seeks to 'recover damages for [an] allegedly unconstitutional conviction or imprisonment' and is barred by *Heck,* 51 U.S. at 486." (alteration in original)); *Segal v. City of N.Y.,* 459 F.3d 207, 219 (2d Cir.2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct."); *accord Vippolis,* 768 F.2d at 44 ("A plaintiff who seeks to hold a municipality liable in damages under section 1983 must prove that the municipality was, in the language of the statute, the 'person who ... subjected, or cause[d][him] to be subjected,' to the deprivation of his constitutional rights." (citing 42 U.S.C. § 1983)); *see also Ewolski v. City of Brunswick,* 287 F.3d 492, 516 (6th Cir.2002) ("Having concluded that the Appellant has not shown a genuine issue of material fact as to any of the asserted constitutional claims, we therefore conclude that the district court correctly dismissed the Appellant's municipal liability claims.").

7      In any event, summary judgment would also be warranted in favor of the County of Nassau because, as discussed *infra,* plaintiff has failed to proffer any evidence of a policy, custom, or

failure to train, that led to any alleged constitutional violation.

In sum, even accepting plaintiff's allegations as true and drawing all reasonable inferences in plaintiff's favor, the Court finds that plaintiff cannot successfully bring a claim because the *Heck* rule, as a matter of law, prevents plaintiff from demonstrating a violation of his constitutional rights, which is a necessary predicate to any municipal liability claim pursuant to Section 1983.

#### b. No Evidence of Violation of Plaintiff's Constitutional Rights

**\*10** Moreover, even assuming that the validity of plaintiff's underlying conviction is not implicated by his claim that the County of Nassau had a policy of ignoring criminal complaints filed by pretrial detainees and criminal defendants, he has presented no evidence to support his contention that the County did not investigate his claims. Thus, because there is no evidence from which a rational jury could find a violation of his constitutional rights, there is no predicate for his municipal liability claim.

The only forms of evidence offered by plaintiff on this issue are his bald assertions and the fact that the County did not prosecute Officer Hughes or Detective Comiskey for their alleged misconduct in relation to plaintiff's trial. Plaintiff's exhibits consist merely of copies of the letters and complaints that he filed with Nassau County entities. Plaintiff presents no evidence to contradict the evidence put forth by defendants, which demonstrates that plaintiff's complaints were investigated. In two affidavits submitted by ADA Kornblau, former Bureau Chief of the District Attorney's Public Corruption Bureau, she asserts that she personally investigated plaintiff's complaints against the officers. (*See* Defs.' Exs. K, X.) According to ADA Kornblau's affidavit, upon investigating Jackson's complaints, "[it] was clear from the minutes that [Jackson's] criminal attorney raised the issue of the failure to turn over *Rosario* material to the trial court, which is the proper venue for such an allegation." (Defs.' Ex. K ¶ 4.) Subsequently, ADA Kornblau determined that the remainder of plaintiff's claims were unfounded, and declined to prosecute the matter. (*See id.* ¶ 4 ("Subsequent to reviewing Jackson's complaint and after determining that the [complaint] did not allege conduct which constituted a crime, I referred the matter to the Internal Affairs Bureau of the Nassau County Police Department ...."); *id.* ¶ 6 ("In view of the fact that the trial of this case

was still pending, and the issues alleged by [Jackson] all pertained to credibility, I notified Daniel Looney, the Assistant District Attorney assigned to Jackson's prosecution, as well as defense counsel, Jeffrey Groder, of Jackson's claims. I also forwarded Jackson's complaint to the Internal Affairs Bureau of the Nassau County Police Department for whatever administrative action they deemed necessary.").) In a separate affidavit, ADA Steven L. Schwartz, Bureau Chief of the District Court Trial Bureau in the Nassau County District Attorney's Office, states that he personally investigated plaintiff's proposed accusatory instruments and found them to be unfounded; accordingly, they were not prosecuted. (Defs.' Ex. Q ¶ 9.) [8]

[8]  The Court further notes that in the absence of any evidence that the Nassau County District Attorney's Office failed to investigate Jackson's complaints, the decision not to prosecute those complaints is protected by prosecutorial immunity. *See, e.g., Fields v. Soloff,* 920 F.2d 1114, 1119 (2d Cir.1990) ("[U]nless a prosecutor proceeds in the clear absence of all jurisdiction, absolute immunity exists for those prosecutorial activities intimately associated with the judicial phase of the criminal process.... This protection extends to the decision to prosecute as well as the decision not to prosecute." (internal quotations and citations omitted)).

Here, as in *Staley v. Grady,* 371 F.Supp.2d 411 (S.D.N.Y.2005), "[s]imply because defendants disagreed with plaintiff as to the merits of the proposed [complaint] and chose not to prosecute the same, does not give rise to an equal protection violation." *Id.* at 417. Here, too, the Nassau County District Attorney's Office received Jackson's criminal complaints, reviewed and investigated them, and declined to prosecute them based upon the conclusion that the complaints were without merit. (*See* Defs.' Exs. K, Q.)

**\*11** In short, due to plaintiff's inability to set forth any evidence from which a rational jury could find a deprivation of his constitutional rights, plaintiff's *Monell* claims against the County of Nassau cannot survive summary judgment.

#### (2) Plaintiff Has Set Forth No Evidence to Support a *Monell* Claim

Even assuming *arguendo* that plaintiff had put forth evidence to create a genuine issue of fact on whether his constitutional rights were violated, his municipal liability claims still cannot survive summary judgment because there is no evidence of a policy, practice or custom to support a finding by a rational jury of municipal liability under *Monell.*

### i. Applicable Standard

Municipalities cannot be held vicariously liable for the actions of an employee under § 1983. *Monell,* 463 U.S. at 691 ("[A] municipality cannot be held liable solely because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."). Thus, "[a] municipality will not be held liable under Section 1983 unless the plaintiff can demonstrate that the allegedly unconstitutional action of an individual law enforcement official was taken pursuant to a policy or custom 'officially adopted and promulgated by that [municipality's] officers.' " *Abreu v. City of N.Y.,* No. 04-CV-1721 (JBW), 2006 U.S. Dist. LEXIS 6505, at *11 (E.D.N.Y. Feb. 22, 2006) (quoting *Monell,* 436 U.S. at 690) (alteration in original). " '[M]unicipal liability under § 1983 attaches where-and only where-a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers ." *City of Canton,* 489 U.S. at 389 (quoting *Pembaur v. Cincinnati,* 475 U.S. 469, 483-84 (1986)). Thus, an individual's misconduct will not result in *respondeat superior* liability for his supervisors absent specific allegations that he acted pursuant to an official policy or custom. *Ricciuti v. N.Y.C. Transit A uth .,* 941 F.2d 119, 123 (2d Cir.1991). However, "[a] court may draw the inference of the existence of a policy or custom 'when a plaintiff presents evidence that a municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.' " *Caidor v. M & T Bank,* No. 05-CV-297 (FSJ), 2006 U.S. Dist. LEXIS 22980, at *35-36 (N.D.N.Y. Mar. 27, 2006) (quoting *Grifin-Nolan v. Providence Wash. Ins. Co.,* No. 04-CV-1453 (FJS), 2005 U.S. Dist. LEXIS 12902, at *10 (N.D.N.Y. June 20, 2005) (quotation omitted)). But, " 'the mere assertion ... that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.' " *Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995) (quoting *Dwares v. City of N.Y.,* 985 F.2d 94, 100 (2d Cir.1993)).

### ii. Application

Even if plaintiff could prove that his constitutional rights were violated, whether at trial or by the subsequent failure to prosecute his criminal complaint for the actions by municipal actors at his trial, this is not sufficient to demonstrate a policy or custom by the County of Nassau. "[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *Ricciuti,* 941 F.2d at 123; *see also Oklahoma City v. Tuttle,* 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *McAllister v. N.Y.C. Police Dep't,* 49 F.Supp.2d 688, 706 (S.D.N.Y.1999) (same); *Palmer v. City of Yonkers,* 22 F.Supp.2d 283, 290 (S.D.N.Y.1998) ("[T]he court will not infer the existence of a municipal policy from a single incident."). As discussed *supra,* " 'the mere assertion ... that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.' " *Zahra,* 48 F.3d at 685 (quoting *Dwares,* 985 F.2d at 100). [9]

9     Plaintiff contends that the persons who violated his constitutional rights were policymakers. (Opp. at 14 ("All of plaintiff's claims were made against the 'policy makers' and not against employees below the policy making level.").) First, as discussed *supra,* plaintiff's claims regarding alleged perjury, withholding of evidence, or falsely verified complaints relating to his trial are barred by *Heck.* In addition, however, plaintiff presents no evidence in support of this argument. Moreover, for purposes of plaintiff's causes of action regarding the failure to investigate his criminal complaints against those persons, plaintiff would need to allege that the persons who allegedly failed to investigate his accusations were policymakers. Plaintiff does not do so. Instead, he acknowledges that the policy maker is District Attorney Kathleen Rice, and the individuals who submitted the defendants' supporting affidavits-those who investigated plaintiff's allegations-are subordinates to the policy maker. (Opp. at 15.)

For the reasons contained in our earlier opinion, this Court declines to add District Attorney Rice as a defendant in this action. *See Jackson, 2009 WL 393640, at \*3-5.* In light of Jackson's repeated argument that the actions of the Nassau County District Attorney's Office's and Nassau County Police Department's actions were part of a policy, procedure, or custom, the Court interprets his complaint and opposition papers to argue municipal liability based only on a theory of municipal policy, procedure, or custom, and not on a theory of unconstitutional action by a policymaker.

**\*12** Plaintiff's complaint, statements at his deposition, and opposition papers to defendants' motion for summary judgment contain vague allegations regarding the existence of a policy or procedure by the County of Nassau of refusing to investigate criminal complaints of pretrial detainees and criminal defendants. (*E.g.,* Opp. at 5-6 ("Plaintiff also stated that he never received any response or letters of acknowledgment from either office though he wrote numerous letters inquiring about the status of his complaints and criminal charges."); Opp. at 6 ("The complaints were never investigated and plaintiff never received any response."); Opp. at 7 ("During the deposition plaintiff continuously testified to the fact that no one ever investigated nor responded to his complaints and grievances.").) These conclusory allegations as to the existence of a policy or custom are insufficient to withstand summary judgment. *See Bishop v. Toys "R" Us-NY, LLC, No. 04 Civ. 9403(PKC), 2009 WL 440434, at \*4 (S.D.N.Y. Feb. 19, 2009)* ("[P]roceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment, and a *pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." (quoting *Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir.1995)*). Indeed, mere "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Id* . (citing *Matsushita, 475 U.S. 574, 587 (1986)*)); Order, *McCrary v. County of Nassau,* No. 06 CV 4982(SJF)(ARL) (E.D.N.Y. Sept. 22, 2008) ("Magistrate Judge Lindsay properly found that [p]laintiff had proffered no evidence to support his assertion that a custom, policy and/or practice, which precludes the consideration of criminal charges brought by an accused against police officers and assistant district attorneys, existed" when plaintiff merely asserted that a police officer was "aware of alleged police misconduct regarding Plaintiff's apprehension, [the] affidavits in support of County

Defendants' summary judgment motion were not sufficiently detailed, and that there was no record of any investigation having been conducted by [County Defendants] in regards to the [complaints]"). Plaintiff has presented no actual evidence of a policy or custom whereby the County would decline to review the criminal complaints of pretrial detainees or criminal defendants.

The County of Nassau, however, has put forward extensive evidence regarding the policies that it has in place to review criminal complaints filed by all citizens. In two separate affidavits, ADA Kornblau affirms that the County does investigate criminal complaints against police officers and ADAs-including those made by pretrial and criminal defendants: "[M]any of the [District Attorney's Public Corruptions Bureau's] cases are referred from members of the public, including direct complaints of police misconduct that the Bureau receives from defendants and/or their attorneys." (Defs.' Ex. X. ¶ 5.) Similarly, "[t]o facilitate the investigation into complaints by incarcerated individuals including pretrial detainees, the Public Corruption Bureau maintains a hotline in the Nassau County Correctional Center for the purpose of allowing inmates to file complaints directly with the Public Corruption Bureau, without having to have their complaints reviewed first by any other entity, agency, or person." (*Id.*) Moreover, ADA Kornblau's affidavit states that "[e]ach criminal complaint is afforded individual attention and investigation ... [and if] after investigation, it is determined that a complaint is supported by credible evidence, the Nassau County District Attorney's Public Corruption Bureau will recommend prosecution, after which those cases will be prosecuted in criminal court." (*Id.* ¶¶ 6-7.)

**\*13** The County of Nassau has also submitted evidence that the system utilized by the Nassau County District Attorney's Office for examining criminal complaints filed by private citizens does not differentiate between complaints based on the individual who files the complaint. ADA Kornblau explains that:

> Complaints are retrieved from within the computerized complaint system in one of three ways: (1) a complainant's name; (2) a defendant's name; or, (3) a complaint number. Therefore, there is no way to retrieve criminal complaints made specifically by pretrial detainees from within the computer complaint

system since complaints are placed into the system without complainant classification (e.g., civilian, pretrial detainee, police officer, etc.).

(*Id.* ¶ 8; *see also* Defs.' 56.1 ¶ 47; Defs.' Ex. W ¶ 11.) In plaintiff's opposition papers, he stated that he did not dispute these facts. (Opp. at 12.)

The County of Nassau also submitted an affidavit from ADA Warren Thurer, the Bureau Chief of the Nassau County Criminal Complaint Unit. According to ADA Thurer, "[s]pecifically with respect to allegations of an assistant district attorney's or police officer's criminal conduct, such allegations will be individually investigated and if appropriate, will be forwarded to the Public Corruption Bureau of the Nassau County District Attorney's Office." (Defs.' Ex. W ¶ 10; *see also* Defs.' Ex. Q ¶ 10 ("There is no policy, practice, or custom within the Nassau County District Attorney's Office that precludes the consideration, investigation, and/or acceptance of criminal cross-complaints brought by an accused against police officers and/or assistant district attorneys based upon the status of the complainant as a pretrial detainee").) An affidavit provided by ADA Steven L. Schwartz, Bureau Chief of the District Court Trial Bureau in the Nassau County District Attorney's Office, states that:

> All proposed accusatory instruments are given individual attention and investigation. There is no distinction made for the status of the complainant and pretrial detainees are not treated any differently than other individuals proposing accusatory instruments to be filed. Each proposed accusatory instrument is investigated for possible criminalityand, if appropriate, any case may be forwarded and assigned to one of the investigative bureaus within the District Attorney's Office, or prosecuted within the District Attorney's District Court Bureau. If the allegations in a proposed accusatory instrument are determined to be unfounded, I send a letter to the Associate Court Clerk stating that the District Attorney's Office has declined

to prosecute the matter.... Specifically, with respect to allegations of an assistant district attorney's or police officer's criminal conduct, such allegations are individually investigated and if appropriate, are forwarded to the Nassau County District Attorney's Office Public Corruption Bureau.

**\*14** (Defs.' Ex. Q ¶¶ 7-8.) Plaintiff has presented no evidence to contradict the information contained in these affidavits or to suggest otherwise.

Nor has plaintiff presented evidence of a policy or custom of committing perjury, withholding evidence, or falsely verifying criminal complaints. Plaintiff has merely asserted that "he can testify based upon personal knowledge to the undisputed facts and that he has credible witnesses and documental evidence to support said factual claims." (Opp. at 11.) Plaintiff has not alleged with specificity other instances of perjury, withheld evidence, or falsified complaints, nor has he presented any other evidence of police officers' commission of perjury, withholding of evidence, or filing of falsely sworn complaints. The County of Nassau, by contrast, has put forward evidence regarding its arrest processing procedures and arrest records. (*See* Defs.' Ex. Z.) Nowhere in the County's arrest policies is false verification of criminal complaints, withholding of evidence, or perjury authorized. Furthermore, the "collective knowledge doctrine" or "fellow officer rule" permits arresting officers to rely upon other law enforcement officers' knowledge to justify probable cause to arrest. *See Savino v. City of New York,* 331 F.3d 63, 74 (2d Cir.2003) ( [F]or the purpose of determining whether an arresting officer had probable cause to arrest, 'where law enforcement authorities are cooperating in an investigation, ... the knowledge of one is presumed shared by all.' "); *Stokes v. City of New York,* No 05-CV-0007 (JFB) (MDG), 2007 U.S. Dist. LEXIS 32787, at \*17 (E.D.N.Y. May 3, 2007) ("[U]nder the collective knowledge doctrine, defendant Buskey is permitted to rely on knowledge obtained by any other officers during the investigation"); *Phelps v. City of New York,* No. 04 CIV. 8570(DLC), 2006 U.S. Dist. LEXIS 42926, at \*9-10 (S.D.N.Y. June 29, 2006) ("The rationale behind the [collective knowledge] doctrine is that in light of the complexity of modern police work, the arresting officer cannot always be aware of every aspect of an investigation; sometimes his authority to arrest a suspect is based on

facts known only to his superiors or associates. Although the doctrine is typically used to establish probable cause for the purpose of admitting evidence at trial, it is equally applicable here. As the Supreme Court has recognized, police officers called upon to aid other officers in making an arrest are entitled to assume that the officers requesting aid have acted properly." (internal quotations and citations omitted)). Accordingly, it is not improper for an officer to verify a criminal complaint based upon facts learned from another officer and plaintiff has put forth no evidence of a policy, practice, or custom of Nassau County police officers falsifying information in criminal complaints or committing perjury.

Moreover, the County of Nassau has put forward an affidavit from a former Nassau County ADA, who investigated and prosecuted a complaint against a Nassau County Police Officer in an unrelated matter that alleged that the officer had committed perjury by falsely testifying before the grand jury. (Defs.' Ex. Y ¶¶ 2-5.) That police officer was prosecuted and convicted of perjury in the third degree. (*Id.* ¶ 8.) In the face of this undisputed evidence of the County prosecuting perjury when it is uncovered, plaintiff has not identified any specific instances of police officers' commission of perjury that were not prosecuted.

**\*15** In sum, the undisputed facts demonstrate the following: (1) plaintiff's conviction prevents him from disputing any alleged constitutional violations relating to his trial; (2) defendants did investigate plaintiff's criminal complaints regarding Officer Hughes's and Detective Comiskey's alleged behavior; (3) defendants do have in place policies and procedures whereby criminal complaints filed by private citizens are investigated-even if those citizens are pretrial detainees or criminal defendants; and (4) the County of Nassau does not have a policy or procedure of permitting

its employees to commit perjury, to falsely verify criminal complaints, or to withhold exculpatory evidence at trial. In short, plaintiff has failed to provide any factual support for his conclusory allegations that the defendants have engaged in unconstitutional policies or procedures. Accordingly, defendant's motion for summary judgment is granted.

### C. Motion for Sanctions

The Court has also reviewed plaintiff's motion for sanctions and, for the reasons stated throughout this opinion, finds plaintiff's claims to be without merit. Accordingly, plaintiff's motion for sanctions is also denied. *See S.E. C. v. Shainberg, 316 F. App'x 1, 2 (2d Cir.2008).*

### V. CONCLUSION

For the foregoing reasons, the Court grants defendants' motion for summary judgment in its entirety. Because the Court grants defendants' motion for summary judgment in its entirety, it also denies plaintiff's motion for sanctions against defendant.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States,* 369 U.S. 438, 444-45 (1962).

SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2010 WL 335581

---

© 2023 Thomson Reuters. No claim to original U.S. Government Works.